## Mehler, Appellant, *v.* Doyle et al.

*Negligence—Automobile — Bicycles — Collision — Contributory negligence—Act of June 20, 1919, section 25.*

1. Where a bicycle and an automobile going in opposite directions on the same street, approach an intersecting street into which the automobile turns, it is the duty of the bicycle rider so to conduct his bicycle as to be able to control it and stop and turn to avoid a collision, and the same duty devolves upon the automobile driver.

If the bicycler has a full view of the automobile for forty feet before it makes the turn, but, owing to lack of control and proper observation, runs into it after the turn was made, he is guilty of contributory negligence; and it is immaterial that the driver of the automobile neglects to comply with the provisions of the Act of June 30, 1919, section 25, P. L. 678, if such neglect in no way contributed to the accident.

Argued October 21, 1921.    Appeal, No. 112, Jan. T., 1922, by plaintiff, from order of C. P. Erie Co., Sept. T., 1920, No. 357, refusing to take off nonsuit, in case of Lillian Mehler v. John Doyle et al., doing business as J. & M. Doyle.    Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.    Affirmed.

Trespass for personal injuries.    Before ROSSITER, P. J. The opinion of the Supreme Court states the facts.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off.    Plaintiff appealed.

*Error assigned* was refusal to take off nonsuit, quoting order.

*J. B. Brooks,* of *Brooks, English & Quinn,* for appellant.

*W. P. Gifford,* of *Gunnison, Fish, Gifford & Chapin,* with him *M. C. Cornell,* for appellee.

PER CURIAM, January 3, 1922:

The refusal to remove the nonsuit entered in this case is affirmed on the following excerpts from the opinion of the court below: "On May 5, 1920, at ten minutes to seven, on the morning of a clear day, an autotruck, then north of 18th Street, was being driven southwardly [near] the center of Parade Street, which is a paved [highway] in the City of Erie, 68 feet wide. A bicycle, then south of 18th Street, was being ridden northwardly [on Parade Street] about five feet from the east curb. ......There were no other vehicles on the street in that vicinity. The truck turned 'suddenly' to the east, into east 18th Street, an intersecting street 32 feet wide. There were street-car tracks in the centers of both streets and a curved switch track, extending round the corner, connected one with the other. ('Suddenly' was defined by all the witnesses as meaning in the same manner that a street car would turn into the same street, as the truck went round the corner on the switch tracks.) The bicycle was propelled northwardly to, and into, 18th Street, until it either came in contact with or slipped on the pavement and precipitated its rider against the truck, which was then from 12 to 35 feet......east of the east curb line of Parade Street, causing injuries to him which resulted in his death......The collision took place, according to the testimony, after the turn was made, at the point of the switch, or opposite the poles in 18th Street, which is from 12 to 35 feet east of the east curb line of Parade Street, with every indication that the truck driver was then endeavoring to avoid the collision, for he ran the truck to the north curb of 18th Street; hence the inevitable conclusion is that the bicycle rider was not giving such attention to the manner of his going as he should, and was, therefore, guilty of

negligence, which at least contributed to, if it did not actually cause, the accident.

"The legal duties of the respective parties at this corner were reciprocal. It was the duty of the bicycle rider so to conduct his bicycle as to be able to control it and stop or turn and avoid a collision with those who were first at the corner, and the same duty devolved upon the truck driver. It was also the duty of the truck driver to go west and south of the intersection of the streets (Act of June 30, 1919, P. L. 678, section 25) before he turned to the left into east 18th Street, which he did not do; and circumstances might have made this act of his negligence. But did the accident follow as a result of this act on his part? It could not have so resulted, for under the undisputed evidence the truck had gone from the west side, or at least the center, of Parade Street, along the rails of the connecting switch, as much as 40 feet in a straight line, or about 67 feet around the curve, to the point of the switch in 18th Street, all the way in plain view of the bicycle rider, before the collision occurred; and it is inconceivable that a bicycle rider, approaching a corner at a proper rate of speed, with his bicycle under control, and exercising proper precaution and observation, could not have avoided a truck moving diagonally for this distance in front of him; with 68 feet of a paved street to the west of it on Parade Street and 16 feet of a paved street to the south of it on 18th Street within which to pass, and especially is this true when the first divergence of the truck to the east was about 25 feet north of the north line of 18th Street, or at the point of the switch in Parade Street, and the turning could not have been abrupt, as it is undisputed that the truck followed the contour of the switch all the way. But it is argued that the bicycle rider had superior rights at the corner over the truck; and, as an abstract proposition of law, this is correct. The evidence, however, does not place him in any position to raise superior rights in his favor, for, under the evidence, he was not the first at

the corner, and could not have been, since the truck had gone by it when hit by the bicycle. The one who arrived at the corner first would have superior rights over the other, and it would not be important how the one arriving first got there in order that those rights should attach. The argument on this branch of the case was that the bicycle rider had a right to assume that the truck driver would go to the right and beyond the intersection of the streets before he made the turn. This is true as a general proposition, but the nonperformance of that duty by the truck driver neither created a right on the part of the bicycle rider to run into the truck, nor released him from his duty to have his bicycle under control and to be observant. It was just as much the duty of the bicycle rider to avoid a collision, if the truck driver was negligent, as it was if he was not. If he [the bicycle rider] saw the truck before it had a right to turn, his duty was to avoid it. If he did not see it until after it had turned, it was his duty to see it then, for the plaintiff's evidence discloses, and it is undisputed, that the truck passed before him in plain view for a distance of at least 40 feet before it reached 18th Street, and that, after the bicycle rider reached 18th Street, he had a paved space, the width of the whole of the south side of the street, to the right of the truck, in which to pass, and the whole of Parade Street to the left of it. It follows, then, that one or both of two incidents must have contributed to the happening of the accident (admitting, as we must here, that the truck driver was negligent in the initial turning, however unimportant subsequent events may have made that fact), to wit, either the bicycle rider was not looking or else he was riding too rapidly to stop in time to avoid coming in contact with the truck. To paraphrase Justice POTTER's opinion in Harvey v. Philadelphia Rapid Transit Co., 255 Pa. 220, 'it is clear that the plaintiff contributed to the injury; had he used his eyes, he must have seen the truck entering upon the turn and starting around the corner in

front of him as he approached. Reasonable prudence required him to stop and let the truck pass, or else give it a wide berth by turning to the right or the left, which the width of both streets gave him ample opportunity to do. There was no occasion for him to drive blindly on until with great violence he came in contact with the truck.' A recovery therefore, under the law, could not have been permitted; hence the compulsory nonsuit was properly granted."

The order appealed from is affirmed.