MARSH, RESPONDENT, *v.* AYERS, APPELLANT.

(No. 6,197.)

(Submitted October 18, 1927. Decided November 2, 1927.)

[260 Pac. 702.]

*Personal Injuries—Cities and Towns—Motor Vehicles—Duty of Drivers—Violation of Traffic Regulations—Proximate Cause of Injury—Directed Verdict—When Proper.*

Personal Injuries — Motor Vehicles — Unexpected Meeting at Street Intersection—Duty of Driver.
1. To escape the charge of having been guilty of contributory negligence, a motorcyclist approaching a street intersection on the right side of the street was not required to act unerringly on being suddenly confronted by a motor-truck in a place in which it had no right to be, but only to make such a choice as, under the circumstances, a reasonably prudent man would have made.

Same—Duty of Drivers of Motor Vehicles on Approaching Street Intersection.
2. Drivers of motor vehicles on approaching a street intersection from opposite directions are not only required to keep well to the right-hand side of the street, slow down and keep a lookout, but to look in such an intelligent and careful manner as to en-

---

1. Emergency rule as applied to automobile drivers in case of accident at street intersections, see note in 27 A. L. R. 1203.

80 Mont.—26

[80 Mont. 401.]

able them to see what a person in the exercise of ordinary care and caution would have seen under like circumstances and cannot escape the penalty of negligence by saying that they did not see that which was in plain sight.

Same—Driver Cutting Street Corners—Negligence Per Se.

3. The driver of a motor vehicle who, in violation of statute and city ordinance, cuts a corner at a street intersection and enters the wrong side of the street whereby a traveler is injured, is guilty of negligence per se.

Same—Duty of Driver Making Unlawful Turn at Street Intersection.

4. One driving an automobile who makes an unlawful turn at a street intersection is chargeable with the duty of seeing any vehicle which would not have been placed in a position of danger had he made a lawful left-hand turn; while, on the other hand, the driver of the latter vehicle would be guilty of contributory negligence if, seeing the approaching vehicle in ample time to stop or turn and thus prevent injury, he had failed to do so.

Same—What Pedestrian on City Street is not Required to Do.

5. A traveler in a city is not required to be continually on the alert to see whether a vehicle approaching on the proper side of the street will violate the traffic regulations, if there be no intervening obstacle or cause to lead him, in the exercise of reasonable care, to anticipate that such a course will be pursued.

Same — Violation of Traffic Regulations in City — What Constitutes Proximate Cause of Consequent Injury.

6. Where by reason of violation of traffic regulations by the driver a motor vehicle suddenly appears before a traveler at a place where it had no right to be, and the latter had no reasonable time, under the circumstances, to avoid the collision, the negligence of the former is the proximate cause of the accident and the latter is not guilty of contributory negligence such as to bar his recovery of damages.

Same—Question of Proximate Cause of Accident One for Jury.

7. Like the issues of negligence and contributory negligence, that as to proximate cause is usually to be decided by the jury under proper instructions.

Directed Verdicts—When Proper.

8. A directed verdict in favor of defendant in a personal injury action is proper only where the evidence is undisputed or susceptible of but one construction by reasonable men, and that in favor of defendant, or where the evidence is in such condition that, if submitted to a jury and a verdict returned for plaintiff, it would be the duty of the court to set it aside.

[1]    Motor Vehicles, 42 **C. J.**, sec. 910, p. 1138, n. 74, p. 1139, n. 75.
[2]    Motor Vehicles, 42 **C. J.**, sec. 691, p. 962, n. 57, p. 963, n. 58; sec. 694, p. 966, n. 88; sec. 697, p. 969, n. 20; sec. 908, p. 1135, n. 55.
[3, 4]   Motor Vehicles, 42 **C. J.**, sec. 691, p. 963, n. 58; sec. 729, p. 998, n. 54, p. 999, n. 59, 60, 68.
[5]    Motor Vehicles, 42 **C. J.**, sec. 908, p. 1136, n. 61; sec. 909, p. 1136, n. 65, p. 1137, n. 67. Municipal Corporations, 28 **Cyc.**, p. 914, n. 24 New.
[6]    Motor Vehicles, 42 **C. J.**, sec. 587, p. 887, n. 68.
[7]    Motor Vehicles, 42 **C. J.**, sec. 1049, p. 1241, n. 74, 75; sec. 1053, p. 1242, n. 96; sec. 1098, p. 1261, n. 38. Negligence, 29 **Cyc.**, p. 635, n. 68, p. 639, n. 4, p. 640, n. 13.
[8]    Negligence, 29 **Cyc.**, p. 627, n. 36 New.

7. See 22 **R. C. L.** 148.

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

ACTION by Harold Marsh, by his guardian *ad litem*, Anna Marsh, against Stacey E. Ayers, doing business as the Midget Creamery Company. From a judgment for plaintiff, defendant appeals. Affirmed.

*Mr. H. C. Hopkins* and *Mr. Miles J. Cavanaugh,* for Appellant, submitted a brief; *Mr. Cavanaugh* argued the cause orally.

The only reasonable inference to be drawn from the evidence is that the failure of plaintiff to keep a proper lookout, his excessive speed or his utter failure to use ordinary care for his own safety and that of others, was a proximate cause of the collision; he was guilty of contributory negligence. (See *Mehler* v. *Doyle,* 271 Pa. 492, 115 Atl. 797.)

"Plaintiff was bound to see what was in plain sight, and cannot escape the penalty of his contributory negligence by simply saying he did not see." (*West* v. *Davis,* 71 Mont. 31, 227 Pac. 41; *Roberts* v. *Chicago M. & St. P. Ry.,* 67 Mont. 472, 216 Pac. 332; *Liston* v. *Reynolds,* 69 Mont. 480, 223 Pac. 507; *Grasle* v. *Portland Ry., L. & P. Co.,* 119 Or. 528, 250 Pac. 379.) "The plaintiff was not only required to look; but to look in such an intelligent and careful manner as to enable him to see the things which a person in the exercise of ordinary care and caution for his own safety and the safety of others would have seen under like circumstances." (*Pratt* v. *Kistler,* 72 Mont. 356, 233 Pac. 600; *Keith* v. *Great Northern Ry. Co.,* 60 Mont. 505, 199 Pac. 718; *Sherris* v. *Northern Pac. Ry.,* 55 Mont. 189, 175 Pac. 269; *Molt* v. *Northern Pac. Ry.,* 44 Mont. 471, 120 Pac. 809.) "The duty to look implies the duty to see what is in plain sight unless some reasonable explanation is shown." (*Knott* v. *Pepper,* 74 Mont. 236, at 243, 239 Pac. 1037; *Kemmish* v. *McCoid,* 193 Iowa, 958, 185 N. W. 628.)

Before the plaintiff could recover it was essential for him to show by a preponderance of evidence, or by substantial evidence to avoid a directed verdict, that the failure of defendant to pass around the center of the street intersection was the proximate cause of the collision. (*Stroud* v. *Chicago M. & St. P. Ry. Co.,* 75 Mont. 384, 243 Pac. 1089; *Knott* v. *Pepper,* 74 Mont. 236, 239 Pac. 1037; *Chicago, R. I. & P. R. Co.* v. *West,* 124 Okl. 147, 254 Pac. 91; *Wiley* v. *Wigg,* 124 Mont. 30, 254 Pac. 22; *Varn* v. *Butte Elec. Co.,* 77 Mont. 124, 249 Pac. 1070; *Houston* v. *Maunula,* 121 Or. 552, 255 Pac. 477.) "To make the failure to observe an ordinance or statute actionable it must appear that the failure was the proximate cause of the injury, the sine qua non, without which the accident would not have happened." (*Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, at 489, 107 Pac. 412; *Neary* v. *Northern Pac. Ry. Co.,* 41 Mont. 480, 110 Pac. 226; *Pure Oil Co.* v. *Chicago M. & St. Paul Ry. Co.,* 56 Mont. 266, 185 Pac. 150; *Wallace* v. *Chicago M. & P. S. Ry. Co.,* 48 Mont. 427, 138 Pac. 499; *Cummings* v. *Reins Copper Co.,* 40 Mont. 599, 107 Pac. 394; *Townsend* v. *City of Butte,* 41 Mont. 410, 109 Pac. 969; *Bracy* v. *Northwestern Imp. Co.,* 41 Mont. 338, 138 Am. St. Rep. 738, 109 Pac. 706; *Andree* v. *Anaconda C. Min. Co.,* 47 Mont. 554, 133 Pac. 163.)

We recognize the oft-repeated rule laid down by this and other courts that where there is a substantial conflict in the evidence the verdict of a jury will not be disturbed; also that evidence will be construed most strongly in favor of a verdict, and that it is only where reasonable minds may not differ as to conclusions to be drawn from the evidence will a refusal to direct a verdict be held error on appeal; but there must be a substantial conflict to warrant the court in refusing to direct a verdict, or to sustain a verdict of a jury. (*Tuttle* v. *Pacific Mutual Life Ins. Co.,* 58 Mont. 121, 16 A. L. R. 601, 190 Pac. 993; *Sanborn Co.* v. *Powers,* 58 Mont. 214, 190 Pac. 990; *McIntyre* v. *Northern Pac. Ry. Co.,* 58 Mont. 256, 191 Pac. 1065; *Carey* v. *Guest,* 78 Mont. 415, 258 Pac. 236.) "Where physical conditions surrounding an accident point so unerringly

to the truth of contributory negligence or want of proximate cause, as to leave no room for contrary conclusions, the mere fact that testimony is introduced in conflict with them is not sufficient to make a case for the jury." (*Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141.)

*Mr. Joseph J. McCaffery*, for Respondent, submitted a brief and argued the cause orally.

Testimony by a bicyclist that he saw a truck coming from the opposite direction before it started to turn, but did not see it after it started to turn, before reaching the center of the street intersection until it was too close for him to avoid a collision with the truck, justifies the refusal of a directed verdict for the truck driver on the grounds of contributory negligence. (1 Blashfield, sec. 42, pp. 519, 520; *Reinders* v. *Olsen*, 60 Cal. App. 764, 214 Pac. 268; *Walterick* v. *Hamilton*, 179 Iowa, 607, 161 N. W. 684; *Dunkel* v. *Smith*, 168 Wis. 257, 169 N. D. 567.)

The matter of proximate cause is one addressed to the jury. (2 Blashfield, pp. 1245–1249: *Szopieray* v. *West Beverly Express & Draying Co.*, 194 Cal. 106, 227 Pac. 720; *Phillips* v. *Hobbs-Parson Co.*, 67 Cal. App. 189, 227 Pac. 622; *Newman* v. *Overholtzer Sons Co.*, 182 Cal. 778, 190 Pac. 175; *Whitelaw* v. *McGilliard*, 179 Cal. 349, 176 Pac. 679.)

"One of two automobiles approaching each other on a highway, on meeting courses, cannot lawfully make a left turn directly in the path of the other, although the place of turning is an intersection of highways which it reaches first, unless the other is sufficiently far away to enable the turning automobile to pass in the clear, or unless a visible signal is given of the intention to so turn, in time to enable the other to avoid the collision." (1 Blashfield, sec. 40, pp. 516, 519; *Webber* v. *Park Auto Transp. Co.*, 138 Wash. 325, 47 A. L. R. 590, 244 Pac. 718; *State Compensation Insurance Fund* v. *Jorn*, 186 Cal. 782, 200 Pac. 624; *Heryford* v. *Spitcaufsky* (Mo. App.), 200 S. W. 123; *Donat* v. *Dillon*, 192 Cal. 426, 221 Pac.

193; *Black* v. *Parke, Davis & Co.,* 211 Mich. 274, 178 N. W.
700; *Galispi* v. *Shafer,* 69 Pa. Sup. Ct. 389; *Groeschner* v.
*Gund Brewing Co.,* 173 Wis. 366, 181 N. W. 212.)

MR. JUSTICE MATTHEWS delivered the opinion of the
court.

Early in the present year Harold Marsh, of the age of seven-
teen years, by guardian *ad litem,* commenced action against
Stacey E. Ayers for damages for personal injuries sustained on
January 6, 1927, when a motorcycle on which he was riding
collided with a motor-truck driven by Ayers. Issue was joined
and the cause tried in the district court of Silver Bow county;
each side having introduced testimony and rested, the defend-
ant moved the court to instruct the jury to return a verdict
in his favor; the motion was denied, and the cause submitted
to the jury. The trial resulted in verdict and judgment for
plaintiff, and from this judgment defendant has appealed,
specifying error only upon the denial of his motion for an
instructed verdict. The pleadings are pertinent here only in
so far as the allegations of negligence and contributory negli-
gence are concerned, as the error specified is predicated upon
the assertion that the plaintiff failed to prove that acts of
negligence on the part of the defendant proximately caused the
injury, and that the record discloses that plaintiff was guilty
of contributory negligence, barring recovery.

The complaint alleges that plaintiff was proceeding on his
motorcycle in a northerly direction on the right side of Mon-
tana Street, in the city of Butte, "with due care and caution,"
and that the collision occurred by reason of the negligent acts
and omissions of the defendant in failing to keep a proper
lookout or to observe or ascertain whether vehicles were coming
from the south when he turned from Montana Street into Mer-
cury Street; that defendant was driving his truck down Mon-
tana Street from the north at a greater rate of speed than
twelve miles per hour, or at twenty-five miles per hour, con-
trary to the city ordinance described in the complaint; and

[80 Mont. 401.]

that defendant negligently and carelessly made a left-hand turn from the west side of Montana Street into Mercury Street without going to the center of the intersection of the two streets, but instead "cut across" to the north of the intersection and entered Mercury Street north of the intersection, contrary to the city ordinance of the city of Butte, therein described. Certified copies of the two ordinances described are attached to the complaint as exhibits.

The answer denies that the collision occurred by reason of any negligent act of the defendant, and alleges, among other defenses, that plaintiff was driving at an unlawful rate of speed and without keeping a proper lookout, and that the collision occurred by reason of his negligence.

The undisputed evidence establishes the following facts: At about 5 o'clock in the evening of January 6, at which hour traffic was very heavy at the intersection of Montana and Mercury Streets, plaintiff was ascending the heavy grade of Montana Street from south to north, in second gear, on a light-weight motorcycle in first-class condition and with good brakes. As he approached the intersection of the two streets he was traveling at about the line where the right wheels of automobiles traveled on the right side of the street and so continued into Mercury Street, and, as he approached the intersection, he looked to right and left on Mercury and observed no vehicle which would interfere with his progress across Mercury Street; he saw cars descending Montana Street on the opposite side, but observed no car turning into Mercury, from Montana.

At approximately the same time the defendant was driving down Montana Street from the north in a 1923 Dodge truck, with a steel body on which was erected a screen framework and top, and on each of which appeared a white panel three feet wide and four feet long. As he approached Mercury Street he looked to left and right on Mercury and down Montana and observed no vehicle which would interfere with his progress in turning on to Mercury Street, and, continuing east thereon, he

turned above the center of the intersection and proceeded across the east half of Montana Street, within the intersection, but wholly within the north half of Mercury Street.

The plaintiff did not see the truck until within five or six feet of it, when he attempted to swerve to the left, but failed to clear the truck, striking the running-board and front fender. The defendant did not know of the proximity of the motorcycle until he felt the impact of the collision, whereupon he stopped his truck within a distance of four or five feet.

As to the speed of the two vehicles the evidence is conflicting; the plaintiff was very positive that he was not traveling over twelve miles an hour, and that, in second gear on an upgrade, he could not have traveled faster than that. On cross-examination, he was asked if he had not told a certain boy of sixteen shortly after the accident that he was going at twenty miles per hour and denied that he had done so. On rebuttal, the boy was called and testified that plaintiff had on two or three occasions made the statement to him. A bystander testified that the motorcycle was not running "very fast."

The defendant testified that he was not driving his truck to exceed eight to ten miles per hour approaching the turn and was not going over eight miles per hour at the time of the collision. On the other hand, the plaintiff testified that when he saw the truck "it was coming pretty fast." Of three disinterested witnesses standing at the corner, the first called testified that the car "was coming at a pretty fair speed"; the second did not see the truck until after the collision; and the third stated first that the truck was going at "a pretty fair speed," and later estimated the speed at "about" or "around" twenty miles an hour, or "maybe more," although he admitted that he had little experience in driving cars and judging speed.

Again there was conflict in the testimony as to the manner in which the defendant turned into the intersection; he testified that he went near the center and made a square turn and did not "cut the corner." One of the witnesses mentioned above testified that he and his two companions were about to cross

[80 Mont. 401.]

Mercury when he saw the truck "cut across" from fifteen to twenty feet from above where they were, when he grabbed hold of his companions, drawing them back, with the warning to "look out, you will get run over"; in corroborating this witness, his companion, who saw the truck at the time, testified that he "saw it come across."

As to the exact place of the collision, the plaintiff and the three witnesses mentioned placed it at about fifteen feet from the curb at the northeast corner of the two streets; the defendant placed it a few feet further from the curb, but still to the north of the center line of Mercury Street.

1. Counsel for the defendant assert that the undisputed evidence shows that plaintiff could stop or turn his motorcycle in six feet while going at twelve miles an hour, and, unheedingly and without any precaution, drove headlong into the conspicuous truck with such force as to "catapult him into the truck," demolish the motorcycle, and bend and break the steel fender and running-board of the truck. These statements are not borne out by the record.

As to the space within which plaintiff could turn the motorcycle, he merely testified, "I couldn't tell you whether you could do it in six feet, but you can sometimes make a comparatively short turn when you are going slow"; as to the distance in which it could be stopped one Kinney, a police officer, in answer to the question, "Supposing that a light Indian motorcycle was being driven up Montana Street, in good condition and with good brakes and by an expert rider, in what distance, at the rate of twelve miles per hour, could the motorcycle be stopped?" replied, "About six to eight feet." On cross-examination, this witness stated that the condition of the tires would have to be considered. The record does not show, therefore, that plaintiff could either have stopped his machine or turned to avoid the collision within the space he had even under ordinary circumstances, and the case does not come within the rule laid down in *Casey* v. *Northern Pacific Ry. Co.*, 60 Mont. 56, 198 Pac. 141, and

*Keith* v. *Great Northern Ry. Co.,* 60 Mont. 505, 199 Pac. 718.

Even had the evidence been as counsel state it on this point, [1] what could ordinarily be done would not be controlling in the second of time in which plaintiff had to make a choice; thus confronted by the peril raised by the sudden appearance of the truck, plaintiff was not required to act unerringly, but only to make such a choice as, under the circumstances, a reasonably prudent man would have made. (*Daniels* v. *Bi-Metallic Co.,* 56 Mont. 284, 184 Pac. 836; *Mullery* v. *Great Northern Ry. Co.,* 50 Mont. 408, 148 Pac. 323.) He attempted to turn within the five or six feet he had, and failed.

Again, while the plaintiff did testify that he was thrown into the truck, he further testified that he had no recollection of what occurred between the time he struck the truck and found himself in the hospital, and the record shows conclusively that he was not "catapulted" into the truck; he could not have been without going through the side panels and screen, and defendant's testimony, corroborated by bystanders, is that immediately after the collision plaintiff was standing beside his machine and was helped into the truck by defendant for the purpose of taking him to the hospital.

While considerable damage was done to the motorcycle and the truck, it was not as great as asserted by counsel, and the record is barren of any testimony as to how much force or momentum would be required to cause that damage. It cannot therefore be said that the evidence shows conclusively that plaintiff was driving faster than he said he was.

2. On approaching the intersection of the two streets it was [2] the duty of each, the plaintiff and the defendant, to keep well to the right-hand side of the street; to slow down to twelve miles per hour (sec. 1743, Rev. Codes 1921; Ordinance 1763, city of Butte), and to keep a lookout ahead; not only to look, but to "look in such an intelligent and careful manner as to enable him to see the things which a person

in the exercise of ordinary care and caution for his own safety and the safety of others would have seen under like circumstances'' (*Pratt* v. *Kistler,* 72 Mont. 356, 233 Pac. 600); and he could not escape the penalty of his negligence by saying that he did not see that which was in plain sight (*West* v. *Davis,* 71 Mont. 31, 227 Pac. 41; *Roberts* v. *Chicago etc. Ry. Co.,* 67 Mont. 472, 216 Pac. 332). However, as to what they were bound to see, the plaintiff and the defendant do not stand in the same position.

3. The defendant, intending to turn from Montana Street [3, 4] into Mercury Street, was required by the traffic regulations (section 1743 and Ordinance 1763, above) to ''keep to the right and swing full around the intersection of the center line of the street,'' and to then see that there was no vehicle properly progressing along either of the intersecting streets with which the truck would collide, operating his car with that degree of care consistent with existing conditions (Huddy on Automobiles, 8th ed., 478, and cases cited). When, however, the defendant elected to turn short of the intersection and enter the wrong side of the street, he was at fault (*Savage* v. *Boyce,* 53 Mont. 470, 164 Pac. 887), and that act itself constituted negligence per se (*Knott* v. *Pepper,* 74 Mont. 236, 239 Pac. 1037); he was chargeable with the additional duty of seeing any vehicle which would not have been placed in a position of danger had he made a lawful left-hand turn. As the plaintiff was traveling in the exact place where he was required by law to travel, the defendant was, under the circumstances, ''bound to see'' the plaintiff's motorcycle; this he did not do.

4. On the other hand, the plaintiff was bound to see those vehicles progressing in a lawful manner on Mercury Street and to observe whether any car passing down the west side of Montana Street was about to make a lawful left-hand turn in time to bring it within his range of travel, and his failure to do so would not relieve him from the implication of contributory negligence had he collided with any such car

negligently driven, and this might be so in this case, if the undisputed evidence showed that the defendant drove nearly to the intersection and was progressing along Mercury Street parallel to the center line of the street in such a manner that plaintiff could not but see the truck while watching for cars making a proper turn. (*Mehler* v. *Doyle,* 271 Pa. 492, 115 Atl. 797.)

5. While the defendant testified that he went nearly to the intersection and then traveled parallel to the center line of the street, the testimony of the two bystanders, who saw the truck approaching and drew back from the curb at the northeast corner of the two streets, would indicate that the truck left the west side of Montana Street fifteen to twenty feet above the north line of Mercury Street and traveled directly toward the curb corner mentioned.

A traveler is not required to be continually on the alert [5] to see whether a vehicle approaching on the proper side of the street will violate the traffic regulations; there being no intervening obstacle or cause to lead him, in the exercise of reasonable care, to anticipate that such a course will be pursued (*Simonsen* v. *L. J. Christopher Co.,* 186 Cal. 786, 200 Pac. 615; *Tschirley* v. *Lambert,* 70 Wash. 72, 126 Pac. 80; *Trout Auto Livery* v. *People's Gas & Coke Co.,* 168 Ill. App. 56), although, of course, had plaintiff seen the truck in ample time to stop or turn and thus prevent the injury, he would have been guilty of contributory negligence barring recovery (*Casey* v. *Northern Pac. Ry. Co.,* above; *West* v. *Davis,* above).

6. On the record, at what point the truck would come within plaintiff's line of vision and become a menace to his [6] further progress is problematical; if by reason of defendant's violation of the traffic regulations, his truck suddenly appeared before the plaintiff at a place where it should not have been, and plaintiff had no reasonable time, under the circumstances, to avoid the collision, the negligence of the defendant was the proximate cause thereof and the plaintiff was not

guilty of such contributory negligence as would bar his recovery. (*Heryford* v. *Spitcaufsky* (Mo. App. 1918), 200 S. W. 123.)

7. The issue of negligence and contributory negligence must [7] usually be decided by the jury under appropriate instructions (*Puckett* v. *Sherman & Reed,* 62 Mont. 395, 205 Pac. 250; *Haney* v. *Mutual Creamery Co.,* 67 Mont. 278, 215 Pac. 656), and this is likewise so as to proximate cause (*Szopieray* v. *West Beverly Express & Draying Co.,* 194 Cal. 106, 227 Pac. 720).

8. As the evidence was in such condition that a jury might [8] render a valid verdict thereon in favor of plaintiff, the court could not properly have granted defendant's motion for a directed verdict, for the reason that a directed verdict in favor of defendant in a personal injury action is proper only where the evidence is undisputed or susceptible of but one conclusion by reasonable men, and that in favor of the defendant (*Jepsen* v. *Gallatin Valley Ry. Co.,* 59 Mont. 125, 195 Pac. 550), or where the evidence is in such condition that, if submitted to a jury and a verdict returned for plaintiff, it would be the duty of the court to set the verdict aside (*McIntyre* v. *Northern Pac. Ry. Co.,* 56 Mont. 43, 180 Pac. 971), and no error was committed in denying the motion.

As we have disposed of the only question presented by the defendant adversely to his contention, the judgment must be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.