KNOTT, RESPONDENT, v. PEPPER, APPELLANT.

(No. 5,744.)

(Submitted September 15, 1925. Decided October 3, 1925.)

[239 Pac. 1037.]

*Personal Injuries — Automobile Accident — Duty of Driver—*
*Driving Without Lights—"Crossings"—Negligence Per Se—*
*Evidence—Cross-examination—Harmless Error.*

Personal Injuries—Negligence *Per Se*—What Constitutes.
1.  Failure to observe a statutory requirement to guard against injury to person or property (such as failure to light an automobile at the time fixed by statute) is negligence *per se*, and if such failure was the proximate cause of the injury, no further showing of negligence is necessary to warrant a recovery.

Same—Negligence—Definition.
2.  Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or the doing what such person under the existing circumstances would not have done.

Same—Negligence—How Proved.
3.  Negligence may be shown either by proof of failure to obey a positive statutory provision, or by acts or omissions of the defendant constituting negligence as defined above (par 2), independent of statutory enactment.

Same—Automobile Collision After Dark—Driving Without Lights—Statutory Provision—Improper Instruction.
4.  In an action for damages for personal injuries sustained in a collision after dark between plaintiff's automobile, the lights of which were burning, and that of the defendant without lights, in which the negligence alleged was defendant's driving without lights when a reasonably prudent man would have had them burning, an instruction that if the accident occurred before the hour fixed by section 1753, Revised Codes, for having lights, the absence of lights could not be deemed negligence, was properly refused, the hour fixed by statute being immaterial if the conditions were such as to require the display of lights.

Same—Evidence—Defective Eyesight of Plaintiff—Cross-examination—When Refusal not Reversible Error.
5.  Where plaintiff in an automobile collision case had admitted on cross-examination that his eyes were bad and his sight not of the best, and further examination as how the condition of his eyes affected his driving would have been proper, refusal to permit him to answer a question as to the nature of his eye trouble was not reversible error, since an answer to it would not have shed any light on his ability to drive the car.

---

1.  Violation of statute or ordinance as actionable negligence, see note in Ann. Cas. 1917E, 852. See, also, 20 R. C. L. 38.
2.  See 20 R. C. L. 9–12.

Same—Automobiles—Duty of Driver Going Out of Private Driveway into Public Highway.

6. It is the duty of one driving an automobile out of a private driveway, before entering the highway, to look for approaching cars, and not to proceed into the highway if he sees another car coming unless, as a reasonably prudent person, he believes, and has the right to believe, that he can pass in front thereof in safety, the duty to look implying the duty to see what is in plain sight, unless a reasonable explanation is shown for not seeing.

Same—Automobiles — Duty of Driver at Crossings—"Crossings" — Definition.

7. The word "crossing" as used in section 1743, Revised Codes of 1921, with relation of the duty of drivers at crossings, *held* to refer to the intersection of a highway and a railroad or of two highways, and therefore an instruction based upon that section offered by defendant, through whose negligence in driving on a private way across the highway with the intention of entering a gate on the opposite side, plaintiff was injured, was properly refused as not applicable.

---

Appeal and Error, 4 C. J., sec. 2581, p. 968, n. 37; sec. 2987, p. 1005, n. 68.

Crossing, 17 C. J., sec. 16, p. 385, n. 24, 24 New.

Motor Vehicles, 28 Cyc., p. 29, n. 35; p. 37, n. 19; p. 47, n. 20; p. 49, n. 49.

Negligence, 29 Cyc., p. 415, n. 1; p. 425, n. 60; p. 436, n. 47.

Witnesses, 40 Cyc., p. 2480, n. 59; p. 2483, n. 65.

*Appeal from District Court, Fallon County; Stanley E. Felt, Judge.*

ACTION by W. D. Knott against James Pepper for damages for injuries from an automobile collision. From a judgment for plaintiff, defendant appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. Al Hansen* and *Mr. Thomas Murn,* for Appellant.

*Mr. D. R. Young,* for Respondent.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from a judgment awarding plaintiff damages for injuries sustained in an automobile collision.

The facts are, that on the evening of September 29, 1924, plaintiff was driving his Ford coupé on a straight public highway, with his lights on and keeping to the right-hand side of the road. The defendant, driving a Ford truck, without lights, entered the highway from a gate to the left of plaintiff, intending to cross the highway to a gate on the opposite side. Neither driver saw the other car until the moment of collision. The plaintiff explained this fact by the absence of lights on the truck, and contended that it was then dark and more than an hour after sunset; the defendant did so by his statement that he was looking straight ahead in order to make a proper passage between two culverts on the opposite side of the road, and, as the road appeared to be in clear, he did not think it necessary to look up the road to ascertain whether a car was approaching, although he knew there was considerable traffic on the road; he contended that it was still light and lacked several minutes of one hour after sunset.

While there is a dispute between the parties as to whether the truck struck the coupé head on at right angles, or whether the front ends of the two cars engaged, it would seem immaterial which version is correct. The sufficiency of the evidence to warrant the verdict is not questioned. Defendant makes seven assignments of error:

1. Assignments 1 and 7 present but one question for determination. The first assignment predicates error upon the [1] court's action in overruling his objection to the question propounded to plaintiff: "How dark was it?" The position taken by counsel was, and is, that, as the statute does not require lights to be displayed until one hour after sunset, the actual condition was wholly immaterial. Adhering to this theory, on the settlement of instructions, counsel offered the following instruction: "If you find by a preponderance of the evidence that the accident occurred before 6:48 o'clock P. M., then the fact that the defendant did not have any lights on the automobile cannot be taken into consideration by you against him."

Assignment No. 7 is based on the court's refusal to give the instruction. The instruction is based upon section 1753, Revised Codes of 1921, requiring lights to be displayed between "one hour after sunset and one hour before sunrise," and the fact that on the day of the collision the sun set at 5:48 P. M.

In support of their position, counsel for defendant state: "It is the general rule that failure to light the lights on an automobile before the time fixed by statute requiring lights is not negligence (Berry on Automobiles, 4th ed., p. 74). 'Where the sun set at 4:52, an automobilist was not required under the statute to light his lamps before 5:52, and failure to light them was not negligence.' (*Turner* v. *Bennett*, 161 Iowa, 379, 142 N. W. 999.)" A careful reading of the authorities cited, however, does not warrant counsel's statement of the law as declared therein.

The text from Berry, found on the page referred to, reads as follows, and goes no further: "It is held that failure to light an automobile before the time fixed by statute requiring lights is not negligence"—citing only the case of *Turner* v. *Bennett* (p. 174, sec. 185). In the next succeeding section the author declares the rule actually found in the opinion referred to, again citing *Turner* v. *Bennett*, as his authority therefor. That section declares: "It is essential, in order to impose civil liability upon the owner of an automobile for operating the same without displaying lights, that the absence of lights was the proximate cause of the injury complained of."

Referring to the case of *Turner* v. *Bennett*, from which counsel purport to quote and upon which the above author inadvertently bases his first statement quoted, we find that the statement made appears only in a syllabus, which is not justified by the opinion. The action was for damages sustained when plaintiff's team became frightened at the approach of an automobile. What the court there held was that "the absence of lights sustained no causal relation to the accident. It was not caused by failure to see and discover. The horses were frightened because they did see and saw afar. The

presence of dazzling lights would manifestly be more liable to increase, than to allay, their fright.''

Failure to observe the mandates of a statute designed to guard against injury to persons or property constitutes negligence *per se,* and, when it appears that the defendant has been guilty of such failure, no further showing of negligence is necessary to warrant a recovery, provided, of course, it is shown that such negligence was the proximate cause of the injury. (*Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412; *Neary* v. *Northern Pac. Ry. Co.,* 41 Mont. 480, 110 Pac. 226; *Puckett* v. *Sherman & Reed,* 62 Mont. 395, 205 Pac. 250.)

Failure to light an automobile at the time fixed by the statute is declared to be negligence *per se* in Berry on Automobiles, section 185; *Sheppard* v. *Johnson,* 11 Ga. App. 280, 75 S. E. 348; *Thomas* v. *Stevenson,* 146 Minn. 272, 178 N. W. 1021.

But the mere fact that, in a given case, no violation of the statutory provision by the defendant is shown cannot preclude the plaintiff therein from showing the conditions existing at the time and the circumstances surrounding the accident with the acts and conduct of the defendant from which the jury may find, if warranted in doing so, that the defendant was in fact guilty of negligence.

Negligence is the failure to do what a reasonable and pru-
[2, 3] dent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done. (*Flaherty* v. *Butte Electric R. Co.,* 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416; *Zanos* v. *Great Northern Ry. Co.,* 60 Mont. 17, 198 Pac. 138.) It may be shown either by proof of failure to obey a positive injunction or by acts or omissions of the defendant within the above definition of negligence, independent of any statutory enactment. The first is termed "legal negligence" (*Neary* v. *Northern Pac. Ry. Co.,* above; *Puckett* v. *Sherman & Reed* above) or negligence in law;

the second is negligence in fact. As the court in the case of *Turner* v. *Bennett,* discussed above, said, with reference to a statute on the conduct of drivers on meeting another vehicle: "Of course, it was not necessary for the plaintiff to show a violation of the statute in order to show negligence on the part of the defendant."

The author of 2 Ruling Case Law, page 1192, has this to say on the subject under discussion: "The statutes in most jurisdictions require the display of lights on an automobile running at night, and running an automobile on the public streets at night in violation of the statutory requirements is evidence of negligence, and such disregard of the safety of others may, independent of the provision of any statute, amount to negligence at common law."

In the case of *Lawson* v. *Town of Fond du Lac,* 141 Wis. 57, 135 Am. St. Rep. 30, 25 L. R. A. (n. s.) 40, 123 N. W. 629, after holding that a person, driving without lights sufficient to see an obstruction in time to stop, was guilty of contributory negligence, the supreme court of Wisconsin said: "We do not ground this rule on the fact that we have a statute requiring automobiles to carry reasonably bright lights while being operated during the hours of darkness. Independent of any statute, and considering the character of these machines, we hold that it would be negligent operation to run them without sufficient lights to enable the driver to see objects ahead of him in time to avoid them."

The negligence charged against defendant is that he drove [4] his truck into the highway without lights at a time when, as a reasonably prudent man, he should have carried lights to enable him to see what was on the highway and to enable the driver of any car approaching to see his truck as it debouched upon the highway. Proof of the charge could legally be made either by showing that defendant failed to display lights more than one hour after sunset or that, regardless of the hour, it was then so dark that reason and prudence dictated such display. While, on a clear night, it may be

perfectly safe to drive without lights up to, and perhaps, on occasions, long after, one hour after sunset, smoke, fog or other weather conditions may, on other occasions, render driving without lights dangerous, regardless of whether the exact moment when the statute requires lights to be displayed had arrived or not.

It follows, therefore, that the question, "How dark was it?" was material and the objection was properly overruled, and that the court did not err in refusing the offered instruction, attempting, as it did, to confine the consideration of the jury to the time of the accident to the exclusion of evidence pertaining to the condition existing at that time.

2. Assignment No. 2 predicates error upon the sustaining [5] of an objection to the following question: "What is the nature of the trouble with your eyes?"

The plaintiff had admitted on cross-examination that his eyes were "bad" and that he had not "the best sight in the world," and further that he presumed he would not be as accurate in driving as a man with good eyes. Cross-examination should not be unduly restricted, and further examination, tending to show how far the condition of plaintiff's eyes affected his driving, might well have been indulged in; but the details as to the nature of his eye trouble could throw no light on his ability to drive his car, even if he was shown to know the exact nature of his affliction, and its exclusion did not constitute reversible error.

3. Specifications 3 and 5 are concerned with the sustaining of objections to questions calling for opinions or conclusions of the witness, and need not be discussed.

4. The plaintiff having testified that defendant's car struck [6] his car head on, wrecking the running-board and the base of each fender, and the defendant having testified that they met at an angle; that "the right hub of my right front wheel was locked with the left hub of his left front wheel," the defendant offered in evidence the two front wheels of his car and the left front hub cap from plaintiff's car. The presiding judge

remarked that he could not see the materiality of the left front wheel or its tire, stating, ''I can't tell without looking at it''; he thereupon admitted the other exhibits, but excluded the left tire. No attempt was thereafter made to have the tire admitted, after exhibiting it to the court.

It being admitted that the defendant came from a private driveway or gate at the side of the highway and was proceeding directly across the highway without looking for approaching vehicles, although he knew that there was considerable traffic on the highway, and, as he put it, ''dangerous traffic,'' it would seem to us, as heretofore stated, that the manner in which the cars collided has little materiality. The correct rule under such circumstances is given in the work of Berry, above referred to, in section 885, as follows: ''It is the duty of one driving out of a private driveway, before entering the highway, to look for approaching vehicles, and not to proceed into the highway if he sees one coming, unless, as a reasonably prudent person, he believes, and has the right to believe, that he can pass in front of such vehicle in safety. The duty to look implies the duty to see what is in plain sight, unless some reasonable explanation is shown''—citing *Kemmish* v. *McCoid*, 193 Iowa, 958, 185 N. W. 628.

Plaintiff's car was in plain sight, for it was coming down a straight road with its lights on. Therefore, if error was committed in this ruling, it was an immaterial error.

5. The sixth and last specification is predicated on the court's [7] refusal to instruct the jury as to the duty of the driver of a vehicle ''at all turns, curves, corners, and crossings.''

The offered instruction correctly quotes a portion of section 1743, Revised Codes of 1921, and would be proper if the facts warranted the giving of such an instruction, but it had no application to the facts before the court. At the point where the accident occurred, there was neither turn, curve, corner nor crossing. The only descriptive word which could be said to be even remotely considered as applicable is ''crossings.'' Throughout our Codes the word is used to denote the intersec-

tion of a highway with a railroad track; it is so used in sections 1647, 3842, 3843, 6595, 6625 to 6636. The word is defined in 17 C. J., at page 385, as follows: "Crossing, as a noun, applied to the intersection of a common highway and a railroad, and, as used in the statutes, the entire structure," *etc.* The Standard Dictionary defines it as "a place where two roads cross on a level; particularly where one of them is a railway,"—citing cases.

But even if used in the statute to refer to the intersection of two highways, those highways must be some sort of established roads. If there was a way of any kind across the highway from the gate from which defendant emerged, to the gate he intended to enter, it could be but a private way, and the rule announced in the preceding paragraph would apply, rather than that contained in the statute.

The court was therefore justified in refusing the instruction as having no application.

We find no substantial error in the record, and the judgment will therefore be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.