DORÉ, Judge.
This suit arises from a collision between a Chevrolet Gravel Truck, belonging to Velfort J. DeArmond, Sr., and being driven by his minor son, Bobby Ray De-Armond, in the course of his employment ■by his father, and a Chevrolet Sedan Automobile owned and being driven by defendant, D. A. Vann, Jr. The accident occurred between 1:30 and 2:00' o’clock p. m., on Sept. 28, 1949 on Essen Lane, a two-lane gravel road with a driving surface of approximately 27 feet and slanting shoulders on either side of 10 feet forming a ditch, 1 to IY2 feet deep. The DeArmond truck had entered Essen Lane from Jefferson Highway and had traveled in a southerly or southwesterly direction on said Essen Lane about 1 to 1% miles from Jefferson Highway when it collided with the Vann automobile traveling in the opposite direction. The suit was brought by Velfort J. DeArmond, Sr., individually, for the damage sustained by his truck in the collision and for medical expenses incurred by him in the treatment of injuries sustained by his minor son in the collision, and on behalf of his minor son as Administrator of his estate, for pain and suffering resulting *475 from the injuries to his son. He sues D. A. Vann, Jr. and his liability insurer, New Amsterdam Casualty Co., alleging that the Vann automobile hit the front left fender of the DeArmond truck, then collided with the rear end of the DeArmond truck with such force that the rear wheels were knocked free of the truck, turning said truck around; that the direct and proximate cause of the collision and resulting damage was the negligence of defendant, D. A. Vann, Jr., particularly 'but not exclusively in the following respects:
“(a) In driving 'his automobile at an excessive and unlawful rate of speed under the circumstances;
“(b) In driving his automobile on the wrong side of the road;
“(c) In driving his automobile in a grossly reckless manner;
“(d) In failing to keep a proper lookout;
“(e) In failing to keep his automobile under control; and
“(f) In driving on a dusty road without his ¡headlights on.”
It may be noted that before trial of the case, Bobby Ray DeArmond died from some other cause than the injuries sustained in the accident, and that his mother and father, sisters and brothers were. substituted as parties-plaintiff in his place.
The defendants in their answer admit that the collision occurred at about the time and place alleged and admit that Bobby Ray DeArmond was the driver of the truck which belonged to Velfort J. DeArmond, Sr., his father, and that D. A. Vann, Jr. was the driver and owner of the Chevrolet automobile and was insured by New Amsterdam Casualty Co., against liability. The answer sets forth that immediately prior to the collision the DeArmond truck was being driven to the rear of another gravel truck, driven by one Buhler, and that there was much dust in the rear of the Buhler truck as well as in the rear of the DeArmond truck and the rear of the Vann automobile; that the Vann automobile and the DeArmond truck collided on the gravel surface of Essen Lane and that serious damage was done to both vehicles and that the rear wheels and the rear axle of the truck were separated from the chassis; that the accident was due to no carelessness or negligence whatsoever on the part of Vann but was due solely and entirely to the gross negligence and carelessness of Bobby Ray DeArmond, whose negligence is imputable to the plaintiff herein; that Vann was driving in an easterly direction on his right side of Essen Lane at a reasonable rate of speed and in a careful and prudent manner; that as he approached the situs of the accident he met the truck driven by Buhler which was being driven on its right side of the gravel road at an estimated speed of 45 miles per hour and was creating a cloud of dust; that the DeArmond truck was being driven a short distance to the rear of the Buhler truck at an estimated speed as fast, if not faster, than the Buhler truck; that because of the cloud of dust created by the Buhler truck, as well as the dust created by the DeArmond truck, the DeArmond truck was at first invisible to Vann; that Vann continued to drive on his right side of the road and safely passed the Buhler truck which continued on its right side of the highway; that as he passed the Buhler truck he observed for the first time the DeArmond truck which was approaching his automobile partially on his, Vann’s, side of the road; that he estimates the speed of the DeArmond truck, at that time, at 45 miles per hour; that immediately upon noticing the approaching DeArmond truck, Vann swerved his car to the extreme right side of the highway and applied his brakes in a futile attempt to avoid colliding with the DeArmond truck; that despite his efforts to avoid the collision, the left front and the left side of the DeArmond truck struck and seriously damaged the left front and the left side and other portions of the Vann automobile and that as a result of the impact, Vann was rendered unconscious immediately and two passengers on the rear seat of his car were injured, one fatally.
The specific acts of negligence on the part of Bobby Ray DeArmond were alleged to be:
*476 “(a) The said Bobby Ray DeArmond was driving the DeArmond truck at an excessive, dangerous and imprudent rate of speed, which was negligence on his part and a proximate cause of the said accident.
“(b) The said Bobby Ray DeArmond was driving the said DeArmond truck to his left or south side of the imaginary center line of the said road immediately prior to and at the time of the said accident, which was negligence on his part and a proximate cause of the said accident.
“(c) The said Bobby Ray DeArmond was driving the DeArmond truck too close to the said Buhler truck, which was negligence on his part and a proximate cause of the said accident.
“(d) The said Bobby Ray DeArmond was driving the DeArmond truck through a cloud of dust immediately prior to and at the time of the said collision and his vision was completely obscured thereby, and hence he was unable to see the approaching car, which was negligence on his part and a proximate cause of the said accident.
“(e) The said Bobby Ray DeArmond was driving the said DeArmond truck in a careless, reckless and inattentive manner, which was negligence on his part and a proximate cause of the said accident.”
The defendants insist that the accident was caused solely by the negligence of Bobby Ray DeArmond, but in the event that the defendant, Vann, be found guilty of any negligence contributing to the accident, they allege contributory negligence on the part of Bobby Ray DeArmond, imputable to the plaintiff herein, barring his recovery.
After trial of the case the District Court rendered judgment in favor of the defendants, D. A. Vann, Jr. and New Amsterdam Casualty Co., and against the plaintiffs, Velfort J. DeArmond, Sr., et al., dismissing the suit. The plaintiffs have appealed.
The trial judge did not favor us with written reasons for his judgment, but necessarily he came to the conclusion of fact that Bobby Ray DeArmond, the driver of the gravel truck, was guilty of negligénce which was a proximate cause of the accident.
In considering how the accident occurred, we have the testimony of only two witnesses who actually saw the accident, to-wit, the defendant, D. A. Vann, Jr., and his guest, David Myles, Jr. The Chevrolet automobile, driven by Vann, was occupied by him as driver and by David Myles, Jr., and another colored boy, brother of David Myles, Jr., who was killed in the crash. The other eye witness, Bobby Ray DeArmond, was the driver of the gravel truck and died, as a result of a subsequent accident, prior to the trial. On the question of liability, besides the testimony of these two eye witnesses, we have the testimony of Buhler, the driver of the lead gravel truck, and we have the testimony of several witnesses who arrived at the scene of the accident shortly after the collision, and who testify with reference to remarks- made then by Vann and young DeArmond, on which there is some dispute as to admissibility — as to whether such remarks can be considered part of the res gestae; and the testimony as to the physical facts.
Considering first the testimony of the eye witnesses, we find that Vann states that he was traveling north on Essen Lane on his way to a golf -appointment at the Country Club, a short distance from the scene -of the collision; that while so traveling he saw two of the Country Club caddies, to-wit, David Myles, Jr. and his brother, walking toward the club and picked them up; that while driving at the rate of speed of about 45 to 50 miles per hour, he saw the Buhler truck at a distance of about 300 to 400 yards and that he thereupon took his foot off the accelerator and that 200 yards from the Buhler truck he had decelerated to 40 or 45 miles per hour and that at 100 yards his speed was between 38 and 40 miles per hour. At a distance of 25 yards from the Buhler truck he was driving between 30 and 35 miles per hour and at that speed he passed the Buhler truck, which he states was traveling on its right hand side of the road. Buhler testified that Vann passed him and estimates his speed at that time at from 50 to 55 miles per hour. In other words, there is some conflict as to the speed of *477 Vann’s automobile when passing the Buhler truck. Vann was in a better position to judge his own speed than Buhler who was traveling in the opposite direction at a speed he, Buhler, states to be at 35 miles per hour. The little colored boy, David Myles, Jr., in his testimony estimated the speed of the Vann automobile, when passing an Oldsmobile (which obviously was the Buhler truck) at 35 or 40 miles an hour; whereas, in a statement made prior to the trial to an investigator or insurance adjuster, named Mancuso, he stated that Vann was driving at 45 to 50 miles an hour. While the speed of Vann, Jr., is not definitely established, it is not shown that he was driving at an excessive or reckless speed while passing the Buhler truck, since the gravel road was dry and not dusty up to the point Vann met Buhler, and the sun was shining and visibility perfect.
On the question as to whether Vann was guilty of any negligence after passing the Buhler truck, we have his testimony that as he passed the first truck he found himself in a dust cloud and that he did not perceive the second truck until he was possibly 20 feet past the first truck; that he applied his brakes when he saw the second truck (the DeArmond truck) which was at a distance of approximately 25 yards from the point of collision, at which time he was driving between 30 and 35 miles an hour and that at the point of impact 'his speed was about 25 miles an hour after applying his brakes. He further testified that the truck was coming right at him on fais side of the highway and that he cut to his right in an attempt to avoid the impending collision.
The other eye witness, David Myles, Jr., testified rather vaguely. At one place he states, in effect, that the truck was on its right hand side of the highway and that the Vann car was on its right hand side. At another place he states that the Vann car was on its right hand side going toward the Country Club and that the truck was traveling “just about the center” of the road when they were about 10 to 15 feet away. He insists that the only vehicle he saw ahead of the DeArmond gravel truck was a black Oldsmobile. He estimates the speed of the Vann automobile to be 35 or 45 miles an hour prior to the accident and does not know whether Vann applied his brakes prior to the collision or whether he swerved his automobile to the right. As to whether he slowed up his automobile, he states, “That it seems to me that he pulled up off the gas.” He further testified that the dust “wasn’t too thick”; that he first saw the DeArmond truck at a distance of 10 or 15 yards prior to the collision. He further admits having made statements prior to the trial, which are not exactly in line with his testimony at the trial. He admits that in his statement to a Mr. Pitcher he stated, “Mr. Vann did not put his brakes on or go into the ditch or anything; he just kept going straight ahead until we hit.” He also admits that when Mr. Vann met “the black Oldsmobile” which passed them he was going about 45 miles per hour. He further testified that the automobile collided with the rear end of the truck; that he does not “think” that it collided with the front of the truck. Under cross examination he admits that under the circumstances the front end of the truck was more to the right than the rear; the last, however, being merely an opinion elicited by the questions of the attorney, 'has little if any weight. This witness also made a statement to investigator Mancuso, on which notations were made by Mancuso’s assistant, named Cole, wherein, among other things, he is supposed to have said that “Just before the accident, Mr. Vann looked down at his wrist watch. Although I saw the truck before we hit, I do not think Mr. Vann did.” That testimony is not of much help because it seems ridiculous to believe that Vann would have picked out the time that he was in a dust cloud to look at his wrist watch and strange that this young colored boy sitting on the rear seat would have observed him doing so. About the only part of the testimony of young Myles that can be accepted is his corroboration of Vann’s testimony that he was driving on his right side at least up to the -time that he passed the Buhler truck, and that is amply proved without his testimony.
*478 As to the position of the DeArmond track at the time of the collision, we have no eye witness testimony except that of Vann and Myles; Vann positively testified that he was driving on his, Vann’s side of the road “looking down his throat”. Myles testified vaguely to the effect that Vann w-as driving on his right and that the truck was traveling in “about the center”. Pro1> ably if young DeArmond had lived he would have contradicted the testimony of Vann and Myles and testified that he was driving to his right and that Vann came over the center line on his side.
State Police Officer Batte, who investigated the collision about half an hour after it occurred, testified that young DeAr-mond made statements to that effect to him. He further testified that when he -arrived there the lights on DeArmond’s truck were still burning and that he asked DeArmond why he had his lights burning, and DeArmond stated it was in order to be seen in the dust cloud created by the Buhler truck traveling ahead of him. The trial judge was of the opinion that the statements of Bobby Ray DeArmond made to Officer Batte were not admissible because they were too remote to the actual occurrence of the accident to form part of the res gestae. However, he admitted his statements in the record for the benefit of the appellate court despite his opinion that the statements were not admissible. It may be noted here that upon arriving at the scene of the accident, Officer Batte passed up the wrecked automobile and possibly the boy who had been killed and the other boy that was injured and proceeded to the truck which was the last physical evidence of the wreck. In that connection the trial judge states “It is not explained why the officer passed up the wrecked automobile and possibly the boy that had been killed and possibly the other boy that was injured and proceeded down to the last physical evidence of the wreck and first questioned the driver of the track. He has testified that his first question to Mr. DeArmond was, ‘Why were you driving with your lights on in broad daylight?’ Mr. DeArmond did what any of us would do if approached by a traffic officer — endeavor to justify ourselves. For these reasons the court believes the objection is good.”
We agree with the trial judge that the alleged remarks of young DeArmond to the traffic officer were obviously not spontaneous but rather made in justification of himself. But, admitting that the alleged statements were made and are admissible, as part of the res gestae, we still cannot see whereby such statements would constitute a preponderance of the evidence absolving DeArmond from negligence and convicting Vann of negligence which was the proximate cause of the accident. According to Batte, DeArmond merely stated that he was driving with his lights so that he could see in the dust or any oncoming car could see him and that he saw the Vann car coming and “tried to avoid having an accident by pulling his truck in the ditch, that is, the right front wheel”; that “he said that he (Vann) was driving in the center of the road and he (DeArmond) tried to pull in the ditch on the right side to keep the automobile -from hitting him.” In his statement Officer Batte expresses the opinion that the truck had to be pulled to the right at an angle to be hit, with the rear end knocked out from under it, in the position it was, that it could not have been knocked out otherwise.
The testimony of other witnesses who arrived at the scene after the collision has to do with the condition of Vann and statements made by -him at that time. It is testified that three of these witnesses removed Mr. Vann from his car at which time he was unconscious -and laid him on the ground on the side of the road; that thereafter his face was washed by some person and in a few minutes he came to and was allowed to stand beside several of tire persons who had arrived at the scene; that in effect, at that time, he inquired as to what had happened; he was informed that he had been in a wreck and that he then asked if the truck had come out of the gate, meaning the gate leading to the L.S.U. experimental station on the east side of Essen Lane at or near the point of impact. Obviously the purpose of this testimony, which was admitted as *479 part of the res gestae, was to show that Vann never saw the truck and that he was lost in this cloud of dust and did not know what happened. In his testimony at the trial, Mr. Vann testified as follows with reference to these statements:
“Q. Don’t you feel, Mr. Vann, that the statements you made immediately after that accident reflected what happened, as far as you knew at that time? A. I wouldn’t necessarily think so, sir. I believe — I don’t know — I know from reading the medical report that I was suffering from shock. I -know I had been hit in the face, hit in the mouth. Whether that was what knocked me unconscious, I don’t know. I don’t know all the effect of shock.
“Q. In other words, you feel that because of the shock you might have made an untrue statement to the effect that you had not seen the DeArmond truck prior to the collision? A. I don’t know whether I did or not.
“Q. If you made these statements, are you now saying they are incorrect? A. I believe that I saw the DeArmond truck. Yes.
“Q. You believe you saw it? A. I saw the DeArmond truck. Put it that way.
“Q. What made you say you believed? A. A form of speech.”
Medical testimony was introduced to the effect that Mr. Vann was not in a condition to make responsible or rational statements at the time right after the collision and prior to being hospitalized. As a matter of fact the medical testimony is to the effect that Vann was still suffering from shock to the extent that he was irrational at the time that he arrived at the hospital.
Nevertheless, the plaintiff contends: “We submit that the only logical explanation of this accident is that immediately prior to the collision, Vann was blinded by dust when he entered the dust cloud at a speed of at least thirty-five miles per hour, (see Vann’s own testimony), and that he got on the wrong side of the road. When DeArmond saw Vann he swerved his automobile to the right in an effort to get in the ditch on the side of the road. He did manage to turn the front end of his truck to the right before the collision (see pictures of the truck). Following the collision his truck went into the ditch and traveled a few feet before getting bade to the spot where his vehicle came to rest (see picture).”
The physical evidence is not of much help in determining the point of impact. Various photographs, showing the scene and the positions of the truck and the damaged automobile after the collision, were introduced by both plaintiff and defendant. These photographs show that the damaged automobile came to rest with its rear wheels in the ditch on its side and the front angling at about 45 degrees in the direction in which it was headed and the truck with its rear wheel unit knocked off came to rest with the right rear edge in a ditch on its side of the highway, also angling in the direction in which it was traveling. Various testimony was introduced showing distances between the point where the collision is thought to have occurred and the points where the car and the truck and the rear wheel unit of the truck came to rest after the collision. Photographs show that the rear door of the truck body was open and that some gravel spilled therefrom. Officer Batte testified that “there was a lot of glass and part of the fender and everything on the corner of the front part of his gravel truck bed, the steel bed, and it was on the right hand side of the road. Well, it was in the center, where all this glass and everything was.” Officer Batte was asked to mark the point where the debris was found on a chart with an x and 'he marked the x at the center of the road. This strongly indicates that the actual impact was the center of the road and that most probably the two drivers were playing safe from going into the ditches on their respective sides when they found themselves in the dust cloud caused by the Buhler truck and consequently moved too far over to the center.
The defendants make three contentions in their brief;
*480 “1st. They contend that there was no negligence whatsoever on the part of Vann.
“2nd. That the sole cause of the accident was the negligence of young DeAr-mond in driving recklessly and too fast on the left side of the road and too close behind the Buhler truck and in a cloud of dust, and
“3rd. That all the parties but the surviving father and mother of Bobby Ray DeArmond are improperly joined as parties-plaintiffs for the reason that Art. 2315 of the Code provides that “if a person with a tort claim die without children, his right of action shall survive in favor of his parents.”
The defendants are entirely correct in their third contention with reference to misjoinder of parties-plaintiffs.
With reference to the first contention that the defendant Vann was free of negligence there is some merit because he had successfully passed the Buhler truck before the collision and undoubtedly at that time was on his side of the highway. However, if we are to give credence to the spontaneous statements made by him right after the accident and to the statements made by young DeArmond to Officer Batte, as well as to the physical evidence particularly that the debris of the wreck was on the center and to the truck’s side of the road, it is difficult to escape the conclusion that Vann failed to keep a proper lookout under the circumstances and failed to pull over to his right, away from the center, in order to avoid the crash. Similarly the physical facts and the testimony of Vann and his guest, Young Myles, indicate that young DeArmond also was negligent under the 'circumstances existing.
It is our final conclusion that the accident was caused by both drivers failing to take proper precautions when they found themselves in this cloud of dust until too late to avoid the crash. In any event the plaintiff herein, in our opinion, has failed to prove by a preponderance of the evidence, even if we consider the statements made by the deceased, young DeArmond, to Officer Batte as competent evidence, that the collision was caused by the sole negligence of defendant Vann.
For these reasons, the judgment appealed from is affirmed.