**Victor R. MERITHEW, Plaintiff,**

v.

**Ray HILL et al., Defendants.**

**Elizabeth Rose MERITHEW, Plaintiff,**

v.

**RICE TRUCK LINES, Defendant.**

Civ. Nos. 1730, 1898.

United States District Court
D. Montana,
Great Falls Division.

Oct. 28, 1958.

322

Angland & Marra, Great Falls, Mont., Meyer & Meyer, Butte, Mont., for plaintiffs.

Graybill, Bradford & Graybill, Great Falls, Mont., for defendants.

JAMESON, District Judge.

These cases were consolidated for trial before the Court without a jury. Plaintiffs, citizens and residents of Canada, seek damages from defendant, Rice Truck Lines, a Montana corporation, for injuries sustained in an accident on January 15, 1954. Ray Hill and others were joined as defendants in the action instituted by Victor R. Merithew. The action was dismissed as to these defendants, a settlement having been effected between the Hills and both plaintiffs.

The accident occurred on U. S. Highway 87, about four miles east of Geyser, and 48 miles southeast of Great Falls, Montana. Three vehicles were traveling in a westerly direction toward Great Falls. The first was a truck-tanker and tanker-trailer assembly owned by defendant and driven by its employee, Thomas Walker. Immediately following the truck was an automobile driven by Ray Asher. Following Asher was an automobile driven by plaintiff Victor R. Merithew, who was accompanied by his wife, the plaintiff Elizabeth Rose Merithew.

The accident occurred about 1:30 p. m. The temperature was 20 degrees below zero. The visibility was good, although there were frost crystals in the air. The highway was snow-packed with intermittent patches of blacktop showing through, and with dry, powdery snow on the shoulders. Defendant's truck tanker was whipping up powder-like snow from the highway, creating a snow cloud or "tail" behind the truck.

A car driven by Ray Hill, who was sixteen years of age, approached from the west at a speed of 50 to 55 miles per hour. After passing the truck, it collided with the left side of Asher's car and crashed head-on into the car in which plaintiffs were riding. Hill's father, who was riding with him, was killed and both plaintiffs were severely injured. Hill testified that when he passed the truck and went into the snow cloud it completely obscured his vision; that the snow cloud extended to the fence on the south side of the highway, although he did not see it until he was alongside the truck; that he took his foot off the accelerator but made no other effort to slow down because he was afraid he might slip on the icy road; and that he knew that by pumping his brakes he could have slowed the car down.

Approaching the scene of the accident from the east, the highway comes down Geyser Hill, a relatively steep hill a mile long on which the road is straight. At the bottom is a bridge over a coulee. Approximately 1,000 feet west of the bridge is a "Curve" sign warning of a long, gradual curve, bearing to the left as one travels east. As one approaches from the west around the curve, vehicles on the highway in the vicinity of the bridge are partially obscured because of a dip in the road. Hill testified that he met the truck at the approximate position of the curve sign and first saw the truck when he was 100 to 150 yards away, but because of the dip failed to see it sooner. It appears from photographs and Hill's own testimony that he should have seen the truck at a substantially greater distance. The accident took place a short distance west of the bridge.

East of Geyser Hill is a relatively level stretch 1.2 miles long from which 55 Mile Hill, a long, steep hill, slopes to the east.[1] Between the crests of the two hills

---

1. Upon examining the area the court found that the distance from the crest of 55 Mile Hill to the scene of the accident was 2.2 miles. Other measure-

the road slopes upwards slightly toward the west requiring a truck to gear down.

Prior to the accident Merithew and Asher had their headlights on. Neither Walker's nor Hill's headlights were on. There is testimony that the clearance lights on the tanker were on, and that several other cars were observed on the highway prior to the accident, but none had their headlights on. Merithew testified that his headlights were on as a courtesy to cars coming through the snow cloud.

Defendant's truck continued into Great Falls. Walker, its driver, was unaware that an accident had occurred until informed of it after his arrival in Great Falls.

Walker and Asher first met at Moore's Junction some 39 miles east of the scene of the accident. Asher left first and the truck passed him when Asher stopped about 10 miles west of Moore to scrape frost from his windshield. Asher in turn passed the truck on a hill. The truck again passed Asher on a down-hill slope, when Walker observed Asher "cleaning the inside of his windshield," and testified that Asher "had only a four inch by six inch square through which he could see." This was denied by Asher, who testified that he did not have trouble with his windshield to any extent—"the same as anyone else. It would get a little frosty and I scraped it."

At the scene of the accident the truck was traveling about 45 miles an hour, as shown by its tack sheet,—the maximum allowed by its governor. Its speed on the level and down-hill stretches between Moore Junction and the scene of the accident was estimated at 35 to 45 miles an hour. In climbing hills the speed was greatly reduced,—estimated on one hill at seven to eight miles an hour. While there is some conflict and inconsistency in the testimony as to the speed of the

Asher and Merithew cars,[2] it can be fairly said that for some four miles immediately prior to the accident they were averaging approximately the same speed as the truck.

There is a sharp conflict in the testimony regarding the length of the snow cloud and the distance between the truck and Asher car. Asher estimated the snow cloud at four or five car lengths, but later said he was "guessing" and it "could have been 1000 car lengths." Asher did not notice any snow whirl when the truck first passed him about 10 miles west of Moore Junction. When the truck passed him the second time, five or six miles from the scene of the accident, the cloud "stopped my vision to the extent that I slowed down until he passed me and this cloud was to the point where I could drive on." From there on Asher claims he was a "short, reasonable distance, half a mile or so" back of the truck. Walker testified that going up 55 Mile Hill he observed two headlights about ten feet behind the truck. Asher said he was about 500 feet behind the truck going up this hill; that after reaching the crest of the hill the truck "began to pull away;" and immediately before the accident he was traveling from four to seven car lengths behind the truck. He considered this a "safe distance" and "didn't expect anyone to be coming at me in my lane of travel."

Hill claims he ran 600 feet to the fringe of the snow cloud, with "about 500 feet of total blindness", when he saw headlights. While he estimated the snow cloud at 1,000 feet long, he said that approximately 400 feet of the cloud "had dissipated."

There is a conflict with respect to Asher's position in relation to the snow cloud. The testimony of Hill and Merithew indicates that he was at the fringe. Asher's testimony was somewhat equivocal. His estimate of the distance

---

ments by the court were substantially in accord with the estimates of the witnesses.

2. For example, Merithew testified that at no time on the day of the accident did he travel over 45 miles an hour. However,

his estimated time for traveling the distance between Forsyth and the scene of the accident, some 252 miles, would indicate he averaged 42 miles an hour for that distance.

varied from five to eight car lengths, although he had previously testified that he had been traveling from four to seven car lengths behind the truck. Hill testified that he sideswiped the Asher car 600 to 650 feet from where he met the truck and estimated that Asher was 1,000 to 1,100 feet behind the truck. Hill stated that Merithew was not in the fringe of the cloud. The testimony indicates he was five to ten car lengths behind Asher.

Hill admitted that he was traveling in the middle of the highway when he came out of the snow cloud. After sideswiping the Asher car, Hill's car went out of control, going first to the south side of the road and then back to the north side and into the Merithew car. Merithew was on the bridge or just coming off from the bridge when he saw the Hill car come out of the snow cloud. After the accident the Hill and Merithew cars were from 150 to 200 feet west of the bridge and the Asher car was in the north barrow pit about 700 feet west of the other cars.

Under these facts was defendant's driver, Walker, negligent? If so, was his negligence the proximate cause of the collision between the Hill and Merithew cars?[3]

Plaintiffs contend that Walker was negligent in both law and fact. The Montana Supreme Court in Knott v. Pepper, 1925, 74 Mont. 236, 239 P. 1037 defined "negligence" as "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done * * It may be shown either by proof of failure to obey a positive injunction, or by acts or omissions of the defendant within the above definition of negligence, inde-

pendent of any statutory enactment. The first is termed 'legal negligence' * * or negligence in law; the second is negligence in fact." 239 P. at page 1039.

Section 3.31 of the Regulations of the Montana Railroad Commission, and Section 192.14 of the Regulations of the Interstate Commerce Commission, relied upon by plaintiffs, provide that motor carriers shall exercise extreme caution and reduce their speeds when hazardous conditions "such as snow, ice, sleet, fog, mist, rain, dust, smoke, or any other conditions * * * adversely affect visibility or traction."

■ In my opinion these regulations were intended to cover the operation by the motor carrier of his own vehicle. The obligation imposed by these regulations is not essentially different from that imposed by Section 32–1101, R.C.M.1947, upon the operators of all motor vehicles. All must drive in a careful and prudent manner and at a rate of speed "no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of traffic, condition of brakes, weight of vehicle, grade and width of highway, condition of surface, and freedom of obstruction to view ahead, and so as not to unduly or unreasonably endanger the life, limb, property, or other rights of any person entitled to the use of the street or highway * * *."[4]

■ Both parties raise the question of whether defendant, a licensed carrier for hire, or plaintiffs, with Hill and Asher, as members of the general public, had the superior right to the use of the highway. It is true, as contended by plaintiffs, that the Montana Supreme Court has held that "public highways belong to the people for use in the ordinary way;" that "their use for the purpose of gain is spe-

---

3. While two distinct questions are presented, negligence and causation are closely related, and many of the cases cited herein consider the questions together.

4. In Cowden v. Crippen, 1936, 101 Mont. 187, 53 P.2d 98, 103, the Court said: "The pertinent question is whether the

speed, whatever it may have been, was so excessive as to affect defendant's control over his car under the conditions which actually existed at that particular time and place, or as they reasonably appear to defendant to exist. This is clearly the import of section 1742, supra." (Sec. 32–1101 of 1947 Code).

'cial and extraordinary," and that "the state has power for the safety of the public to regulate the use of its public highways." Barney v. Board of Railroad Com'rs, 1932, 93 Mont. 115, 17 P.2d 82, 85.[5]

Accordingly the court held that as a means of protecting its highways from abusive use and the public from the evils incident to unregulated competition, the state had power to require both common and private carriers for hire to obtain certificates of public convenience and necessity as a condition precedent to the right to conduct such business. But once a carrier has obtained such certificates and has complied with pertinent regulations, there is nothing to indicate that it has an inferior right to the use of the highways. Nor should it have a superior right.

Plaintiffs argue that Walker was negligent in "failing to slow his speed down to a point where he created no (such) hazardous snow cloud;" and that "his failure to slow down and even stop, if it was necessary, for the purpose of doing away with the snow cloud he was creating, was the negligence which put all of the parties in peril." Plaintiffs further contend that Walker was negligent "in his inattention to keep a lookout ahead for approaching vehicles, * * * in his inattention to the snow cloud condition he was creating, in his failure to keep a reasonable lookout through his rear view mirror, and (in) * * * just not caring what effect his conduct had upon other users of the highway * * *."

Plaintiffs rely on Marsh v. Ayers, 1927, 80 Mont. 401, 260 P. 702, where the court stated that when approaching an intersection a driver has a duty "not only to look, but to 'look in such an intelligent and careful manner as to enable him to see the things which a person in the exercise of ordinary care and caution for his own safety and the safety of others would have seen under like circumstances'." 260 P. at page 705. Apparently plaintiffs contend that Walk-

er was required to keep a lookout for cars approaching from the front and rear and when he saw any was under a duty to slow down to a speed at which he would no longer create a snow cloud.

Did the creation of the snow cloud by defendant's truck in itself constitute negligence? There are no Montana cases in point. In fact, I find none from other jurisdictions under a similar state of facts, and none have been cited in the able briefs filed by counsel for both parties. There are numerous cases, however, from other jurisdictions where the vision of drivers of vehicles became obscured because of snow, dust, smoke, sun or fog. In a few cases the agency causing the reduced visibility was joined as a defendant. More often the controversy was between other vehicles using the highway.

Stephens v. Tatum, 1955, 92 Ga.App. 256, 88 S.E.2d 456 is perhaps most closely in point. Plaintiff brought an action for the death of her son in a collision with a car whose driver was blinded by dust raised by defendant's car. The court sustained a general demurrer to the petition and dismissed the case.

The appellate court affirmed, stating in a syllabus that "by the exercise of ordinary care her deceased son could have avoided the consequences of the alleged negligence of the defendant after it became apparent to him, or in the exercise of ordinary care should have become so apparent." 88 S.E.2d at page 457.

With respect to the conduct of the third car the court said: "On the other hand, should the allegations of the petition be so construed in the plaintiff's favor as to merit an assumption that the deceased did stop, slow down, pull to the right, or do any of those things which prudence would dictate in a situation where one is completely blinded by a cloud of dust, it would then appear that the collision was the result of negligence of the driver of the oncoming automobile in driving into the 'dust bowl' with unabated speed on the wrong side of the road, and would be such an intervening

---

5. See also Board of Railroad Com'rs v. Reed, 1936, 102 Mont. 382, 58 P.2d 271.

negligent act on her part as to constitute the sole proximate cause of the injury, and the negligence of the defendant's agent, although existing, would be too remote to be actionable, it not being alleged that the defendant's driver should have anticipated negligence on the part of the oncoming car in so driving under circumstances where she could not see where she was going."

Plaintiff relies on Pitcairn v. Whiteside,[6] 1941, 109 Ind.App. 693, 34 N.E.2d 943, and Fisher v. Southern Pac. Co.,[7] 1925, 72 Cal.App. 649, 237 P. 787, in both of which defendant Railroads were held liable for injuries resulting from accidents caused by motorists being blinded by smoke from fires on defendants' rights of way. While these cases tend to support plaintiff's position, they are distinguishable. The reduced visibility was not caused by vehicles using the highway in an otherwise lawful manner, as here, but rather from the negligence of third parties who were not using the highway and were using their property in a manner which was injurious to others.[8]

There are numerous cases involving a similar accident where the driver of the vehicle creating the reduced visibility was not made a defendant. For example, in Rosenbloom v. Mercer, La.App.1942, 8 So.2d 328, plaintiff was following a truck which was raising a cloud of dust when he collided with defendant's truck. Both drivers were blinded by the dust. The court held that the plaintiff was negligent in following the truck ahead of him so closely that he could not see a distance ahead sufficient to stop when an emergency arose, and that the defendant was negligent in not stopping his truck until he could see where he was driving. The question of whether the driver of the truck creating the dust was negligent was not in issue.[9]

In my opinion the creation of the snow cloud in itself did not constitute negligence. Snow clouds are hazards which are not infrequently encountered in driving in sub-zero weather on snow packed highways. The size and length of a snow cloud depends to some extent upon the size and speed of the vehicle. The testimony indicated that a truck tanker traveling at seven or eight miles per hour would not raise a snow cloud; at 12, possibly a small cloud; and at 25, would definitely create a cloud.

6. In this case the fire had been burning for several hours and was extinguished immediately after the accident. A gang of 110 men was laying rails for defendant in the vicinity. In holding that the creation of the cloud of smoke was negligent the court said: "There was a duty upon appellants to refrain from the creation or maintenance of any condition upon their right of way which subjected the traveling public, using the public highways in the vicinity of such right of way, to unreasonable risks or conditions that were unnecessarily dangerous." 34 N.E.2d at pages 946, 947.

7. In this case, "a cloud of smoke from a thicket fired by respondent suddenly enveloped them (plaintiffs), making it impossible for them to see in the direction in which they were going farther than the front of the hood of the automobile." Plaintiff testified that "the smoke was suffocating and made vision ahead impossible, and that flames were visible and the heat therefrom intense." The court said that ordinarily the plaintiff's conduct in entering the smoke cloud would constitute negligence as a matter of law, but plaintiff's "apprehension of danger from the rear, the obstruction of vision by the smoke, the heat and sight of the flames, calculated to induce excitement and confusion of mind" were such that it might be inferred "was such as an ordinarily prudent man might reasonably have adopted under like circumstances." [237 P. 788.]

8. Moreover, plaintiffs, as well as Asher, were not suddenly confronted with a condition obscuring their vision but instead had observed the snow cloud for a distance of several miles.

9. See also Mitsuda v. Isbell, 1925, 71 Cal. App. 221, 234 P. 928; DeArmond v. New Amsterdam Cas. Co., La.App.1951, 53 So. 2d 474; Johnson v. Reinhard Bros. Co., 1939, 205 Minn. 212, 285 N.W. 536; Rainman v. National Mut. Casualty Co., 1943, 156 Kan. 294, 133 P.2d 145; Wilson v. Fredericksen, 1949, 94 Cal.App.2d 361, 210 P.2d 741.

True, a snow cloud causes inconvenience to other users of the highway. So do trucks climbing a long, winding hill at very slow speeds. Would it be reasonable to require a truck to slow down to seven or eight miles an hour or stop so that it would not create a snow cloud? A large truck traveling consistently at slow speeds or stopping to avoid the creation of snow clouds might well create a traffic hazard equally as serious as the snow cloud itself. As a practical matter, such a requirement would in effect bar legal use of the highways to large trucks under the conditions existing at the time of this accident. Yet licensed carriers and private vehicles are equally entitled to the use of the highways.

While the snow cloud created by defendant's truck undoubtedly caused the other users of the highway inconvenience and annoyance, if the other drivers had exercised the degree of care required under the circumstances, the accident would not have happened. When traveling under snow conditions as they were on the day of the accident, a driver should be alert for approaching vehicles and should take steps to keep his vehicle under control while passing through a snow cloud. Similarly, a driver following such a cloud should remain a safe distance behind, taking into consideration the probability that other vehicles will be coming through the cloud under conditions of reduced visibility.

Assuming arguendo that the creation of the snow cloud was negligence, was it the proximate cause of the accident? "On the question of proximate cause, definitions of the term 'are inadequate to afford a definite and invariable rule whereby a line between those causes which the law regards as sufficiently proximate and those which are too remote to be the foundation of an action; and the applicability of an announced definition must be determined by the peculiar facts and circumstances of the particular case. * * * 45 C.J. 900'." Chancellor v. Hines Motor Supply Co., 1937, 104 Mont. 603, 69 P.2d 764, 768.

In Reino v. Montana Mineral Land Development Co., 1909, 38 Mont. 291, 99 P. 853, the court announced the following rule: " 'It is not required that the "specific" injury or "such" an injury as is complained of was or ought to have been specifically anticipated as the natural and probable consequence of the wrongful act. It is sufficient if the facts and circumstances are such that the consequences attributable to the wrongful conduct charged are within the field of reasonable anticipation; that such consequences might be the natural and probable results thereof, though they may not have been specifically contemplated or anticipated by the person so causing them.' " 99 P. at page 854, 855.

In Mize v. Rocky Mountain Bell Telephone Co., 1909, 38 Mont. 521, 100 P. 971, probably the leading Montana case on proximate cause, the court explained the rule in the Reino case and stated the following principles: "The 'proximate cause' of an injury is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred * * to relieve the original wrongdoer the result must be such that he could not reasonably have anticipated it. In 29 Cyc. 499, the rule is stated as follows: ' * * The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequence, and if such result is attributable to the original negligence as a result which might reasonably have been foreseen as probable, the liability continues.' * * * it is not necessary to show that he ought to have anticipated the particular injury which did result; but is it sufficient to show that he ought to have anticipated that some injury was likely to result as the reasonable and natural consequence of his negligence. This is the meaning of section 6068 Rev. Codes,[10] and expresses the rule announced by this court in Reino v. Montana Min-

10. Now Sec. 17–401, R.C.M.1947, which reads: "For the breach of an obliga-

tion not arising from contract, the measure of damages, except where otherwise

eral Land Development Co., 38 Mont. 291, 99 P. 853." 100 P. at page 973.

In Burns v. Eminger, 1929, 84 Mont. 397, 276 P. 437, a boy was killed when his sled collided with a truck. The driver's failure to sound his horn and to have chains on the truck were held not to be the proximate causes of the collision, but his negligence in cutting across a playground was held to be the proximate cause. The court said: "In determining the proximate cause of an injury or accident, we must always look to the succession of events existing in every transaction, more or less dependent each upon the preceding event * * * If this sequence of events leads up to and results in the injury without intervening independent cause, it is the efficient and proximate cause. 'The cause of an event is the sum total of the contingencies of every description which, being realized, the event invariably follows. * * * Ordinarily that condition is usually termed the cause whose share in the matter is the more conspicuous and is the more immediately preceding and proximate to the event. Where a particular event, according to human experience, is likely to be followed by another particular event, the person whose agency produced the former event is responsible for any injurious consequence which may flow from the latter. The reason is that he ought to have foreseen this consequence.' " 276 P. at page 442.[11]

Whether the creation of the snow cloud was the proximate cause of plaintiff's injuries depends upon whether Walker "ought to have anticipated that some injury was likely to result as the reasonable and natural consequence of his negligence." In determining this question two factors become important: (1) the degree of care required of persons traveling on the highways under the conditions prevailing on the day of the accident; and (2) whether Walker was bound to anticipate the negligence of other persons.

Drivers of automobiles will be deemed negligent if they fail to do what a "reasonable and prudent person would ordinarily have done under the circumstances." Knott v. Pepper, 1925, 74 Mont. 236, 239 P. 1037, 1039. Where the "vision of the driver of an automobile is obscured, whether by the lights of an approaching car, fog, smoke or for any other reason, it is his duty to stop until visibility is restored, or to reduce his speed and have his car under such control that he can stop immediately if necessary." Price v. State Highway Commission, 1946, 62 Wyo. 385, 167 P.2d 309, 313.[12] One is not justified in "ignoring conditions of the highway which are commonly prevalent and with which he is familiar." City of Cincinnati v. Metze, 1930, 40 Ohio App. 110, 178 N.E. 222, 223.[13]

If the other drivers had exercised reasonable care under the circumstances, the snow cloud itself would not have caused an accident. Was Walker then bound to anticipate that other drivers would drive in a negligent manner?

---

expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

11. Other Montana cases which have considered the meaning of "proximate cause" include Lake v. Emigh, 1948, 121 Mont. 87, 190 P.2d 550; McCloskey v. City of Butte, 1927, 78 Mont. 180, 253 P. 267; Cowden v. Crippen, 1936, 101 Mont. 187, 53 P.2d 98.

12. Quoted from Taylor v. Quesnel, 113 Vt. 36, 29 A.2d 812, 813. In Shields v. County of Buffalo, 1955, 161 Neb. 34, 71 N.W.2d 701, 704 the court stated in a syllabus: "The existence or presence of smoke, snow, fog, mist, blinding headlights, or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which imposed upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances."

13. See also Dalzell v. Los Angeles County, 1948, 88 Cal.App.2d 271, 198 P.2d 554; Dominick v. Haynes Bros., 1930, 13 La.App. 434, 127 So. 31.

The Montana State Supreme Court has held that one is not required to anticipate the negligence of other persons. In Fulton v. Chouteau County Farmers' Co., 1934, 98 Mont. 48, 37 P.2d 1025, 1032, the court held that reasonable care did not require the plaintiff to "anticipate that the driver of an on-coming car will not see that which is plainly before him, or drive with his car so out of control that he cannot stop when he does see the obstruction, or person, in the line of his travel, when, ordinarily, he would have plenty of time and space within which to avoid the injury." [14]

If Walker were negligent in creating the snow cloud, the potential danger created by the snow cloud was known to Hill, Asher and Merithew.[15] The following statement from American Jurisprudence is pertinent: " * * * One who acts negligently is not bound necessarily to anticipate that another person will be negligent after the latter has discovered the danger arising from the former's negligence. The first actor, however, is not permitted to assume that the second actor will discover the danger caused by the first actor's negligence. Accordingly, where the second actor, after having become aware of the existence of a potential danger created by the negligence of the first actor, acts negligently in respect of the dangerous situation and thereby brings about an accident with injurious consequences to others, the first actor is relieved of liability, because the condition created by him was merely a circumstance and not the proximate cause of the accident. However, if the second actor does not become apprised of the danger arising from the first actor's negligence until after his own negligence, added to the existing peril, has made an accident with injurious consequences inevitable, both actors are liable, since the negligence of the one concurs with the negligence of the other proximately to cause the injury." 38 Am.Jur. 731, Negligence § 72.

Hill was negligent, even reckless, and his negligence was a proximate cause of the accident. Under his own testimony he drove through the snow cloud a distance of 500 to 600 feet at a speed of 50 to 55 miles an hour, without attempting to stop or reduce the speed of his vehicle except for taking his foot off the accelerator, although he knew that by pumping his brakes he could slow down. While he testified that he did not see the snow cloud until he was alongside the truck, in the exercise of ordinary care he should have seen it for an appreciable distance before meeting the truck, particularly in view of his testimony that the cloud extended across his lane of travel to the fence on the south side of the highway.

Asher was negligent in traveling in the fringe of the snow cloud, particularly in view of the fact that he had observed the nature and extent of the cloud for many miles.[16] As the result of its colli-

---

14. See also Marsh v. Ayers, 1927, 80 Mont. 401, 260 P. 702, 705; Ashley v. Safeway Stores, 1935, 100 Mont. 312, 47 P. 2d 53, 59; Cowden v. Crippen, 1936, 101 Mont. 187, 53 P.2d 98, 104; McCulloch v. Horton, 1937, 105 Mont. 531, 74 P.2d 1, 3, 114 A.L.R. 823; Koppang v. Sevier, 1938, 106 Mont. 79, 75 P.2d 790, 793; Webster v. Mountain States Telephone & Telegraph Co., 1939, 108 Mont. 188, 89 P.2d 602, 603; 38 Am.Jur. 729-731, Negligence § 72.

15. This is not a case where the other drivers were suddenly confronted with a dangerous condition or where a dangerous situation was created through the sudden slackening of speed. On the contrary, the evidence is undisputed that the truck increased its speed after reaching the top of 55 Mile Hill and was traveling at its maximum speed as it hit the bottom of Geyser Hill.

16. Asher's testimony on cross-examination is significant:
"Q. Were you far enough back where you thought you could stop this car if anything came out of the snow whirl? A. I was far enough if the truck stopped. I did not expect anyone to come out of that snow whirl on my side of the road.
* * * * *
"Q. Is it your testimony that you were not safe if somebody came out of that snow cloud at you? A. I do not know. It did not enter my mind anyone would come out of it.
* * * * *
"Q. You did not consider that a vehicle might come towards you? A. I mean, I don't want to seem smart, but I don't expect anyone to be coming at me in my lane of travel.
"Q. You have said the snow cloud covered both lanes. A. Yes."

**330**

sion with the Asher car in the fringe of the snow cloud, the Hill car went out of control and into plaintiff's car.[17]

Even assuming that Walker was negligent in creating the snow cloud, he was not bound to anticipate the negligent acts of Hill and Asher which produced the injuries. "There is no evidence * * * that (Walker) might have foreseen the accident * * * or that (he) should have anticipated that some accident was likely to happen as the reasonable and natural consequence of the manner in which he was driving."[18] In my opinion, the accident was proximately caused by the negligence of Hill and Asher; and the negligence, if any, of Walker was not the proximate cause of the accident.

Pursuant to Rule 11(b) and (d) of the local rules of court, defendant shall within fifteen days, prepare, serve and file findings of fact, conclusions of law, and draft of judgment in accordance with this decision.

Done and dated this 28th day of October, 1958.

---

17. It is not necessary to determine whether Merithew was negligent in driving too close to the snow cloud. It is noted, however, that for four miles he had traveled eight to ten car lengths back of Asher. During that time he observed the snow cloud, which remained in a relatively constant position with respect to the Asher car. At the point of accident he was about eight car lengths behind Asher. As his car was about 17 feet long, this would place him 136 feet back of Asher. Assuming that Merithew was traveling from 40 to 45 miles an hour and Hill from 50 to 55 miles an hour, less than one second would elapse from the time Hill struck Asher and when he struck Merithew. This is consistent with the testimony of Hill and Merithew as to the time between impacts.

18. See Cowden v. Crippen, 1936, 101 Mont. 187, 53 P.2d 98, 104 and cases there cited.